UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARSH & MCLENNAN COMPANIES, INC.,           :
                                             :
                    Plaintiff,               :
                                             :
          - against -                        :    11 Civ. 8391 (PAC)
                                             :
GIO INSURANCE LIMITED,                       :    OPINION & ORDER
                                             :
                    Defendant.               :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 31, 2012

HONORABLE PAUL A. CROTTY, United States District Judge:

In this insurance dispute, Plaintiff Marsh & McLennan Companies, Inc. ("MMC") seeks payment on an insurance policy for professional liability coverage issued by Defendant GIO Insurance, Ltd. ("GIO"). On October 19, 2011, MMC filed its Complaint in Supreme Court, New York County, alleging breach of contract. GIO removed this action by notice of removal, filed on November 18, 2011, asserting diversity jurisdiction under 28 U.S.C. § 1332(a). GIO now moves to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). For the reasons discussed below, GIO's motion is denied.

**BACKGROUND**

MMC is incorporated in Delaware and has its principal place of business in New York, New York. GIO is an Australian corporation with its principal place of business in Sydney, Australia. MMC alleges that it purchased $350,000,000 of professional liability insurance from several insurers for "Errors & Omissions" or "E&O" coverage. (Compl. ¶ 6.) During the period from September 30, 1999 through September 30, 2000, MMC's E&O coverage included two layers of excess coverage, each valued at $50,000,000. GIO insured a portion of these two layers. Specifically, MMC purchased GIO policy number CI-0026968, which has a liability

1

limit of $1,000,000 for the First Excess Layer, and policy number CI-0037270, which insured up to $300,000 of the $50,000,000 Second Excess Layer (collectively the "GIO Policies" or the "Policies").[1] (Id. ¶¶ 11-12.) The GIO Policies provide for automatic reinstatement of the full limit of liability when the original liability limits are expended (the "Reinstatement Provision"). (Id. ¶ 15.)

MMC alleges that it made various claims under the GIO Policies and other insurers' policies for the period from September 30, 1999 to September 30, 2000 (the "99-00 E&O Claims"). (Id. ¶ 18.) MMC further alleges that it incurred approximately $404,000,000 in losses relating to the 99-00 E&O Claims, and that this amount exceeded the total $350,000,000 limit of MMC's E&O coverage. (Id. ¶ 22.) The exhaustion requirements of the Reinstatement Provision have been satisfied, and GIO has paid its original policy limits of $1,000,000 and $300,000 under the First and Second Excess Layer, respectively. (Id. ¶ 25.) MMC contends, however, that GIO has breached its contractual obligations by refusing to pay its reinstated limits under the GIO Policies, as well as $28,414 of its limit under the Second Excess Layer Policy.

## DISCUSSION

GIO contends that the Court does not have personal jurisdiction over it in this case. GIO, an Australian insurer, issued the Policies to MMC's Australian subsidiary. All negotiations with respect to the issuance of the Policies took place in Australia, and the Policies were delivered to MMC's Australian subsidiary in Australia. In short, according to GIO's contentions, all "contacts between the parties took place in Australia between GIO and MMC's Australian subsidiary." (Def's Mem. at 1.) MMC contends that as a New York based company, it is

---

[1] The GIO Policies are attached as Exhibits B and C to the Declaration of Nicholas Hall ("Hall Decl."), submitted with GIO's motion.

entitled "to enforce the terms of an insurance policy governed by New York law covering liabilities substantially incurred in New York." (Pl's Mem. in Opp. at 1.)

    A.  12(b)(2) Standard

"When responding to a Rule 12(b)(2) notion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (quotation omitted). Prior to discovery, the plaintiff need only make "a *prima facie* showing" of personal jurisdiction to defeat a motion to dismiss under Rule 12(b)(2). Id.; see also Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) (stating that the Court may rely on "information in the complaint as well as supporting documentation" to determine whether *prima facie* showing of jurisdiction exists). The Court must construe all pleadings and affidavits in the light most favorable to the plaintiff. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

A district court sitting in diversity exercises personal jurisdiction over a defendant to the same extent as courts of general jurisdiction in the forum state, here New York. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002). The parties agree that New York law governs the Court's analysis. See Volkswagenwerk Aktiengessellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984).

The personal jurisdiction inquiry is two-fold: "First, [the Court] must determine whether there is personal jurisdiction over [Defendants] under New York state law; second, if New York law provides for personal jurisdiction, the Court must determine whether the assertion of jurisdiction comports with the constitutional requirements of due process." Beatie and Osborn

LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 386 (S.D.N.Y. 2006) (citing Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

    B.  N.Y. CPLR § 302(a)

MMC argues that the Court has jurisdiction under the New York long arm statute, CPLR § 302(a). Section 302(a) "permits specific jurisdiction over a defendant when the plaintiff's claim relates directly to the defendant's New York contacts, however limited." Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 322 (S.D.N.Y 1998). The statute provides that "[a] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." N.Y. CPLR § 302(a)(1).

To establish personal jurisdiction under this provision, the plaintiff's claim must arise from the defendant's business activity. See CutCo Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (requiring "an articulable nexus between the business transacted and the cause of action sued upon" for jurisdiction under § 302(a)(1)). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a "substantial relationship between the transaction and the claim asserted." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988). This nexus is required for jurisdiction under either the "transacts business" clause or "contracts anywhere" clause of § 302(a)(1).[2] See Beacon Entrs., Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983).

---

[2] The "contracts anywhere" clause was added by the New York Legislature in 1979 "in order to ease the plight of New York residents seeking to obtain jurisdiction over those outside its borders who may be deemed virtually or constructively to do business in this state." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 789 (2d Cir. 1999) (internal quotation and citation omitted). The drafters intended this addition "to extend New York long-arm jurisdiction to its constitutional limits." Island Wholesale Wood Supplies, Inc. v. Blanchard Indus., Inc., 476 N.Y.S.2d 192, 194 (N.Y. App. Div. 2d Dep't 1984).

MMC has made a *prima facie* showing of jurisdiction under the "contracts anywhere" clause of § 302(a)(1).  Although GIO argues that the Policies did not require it to perform any "services" in New York, "[m]ost of the federal district courts in New York that have applied CPLR § 302(a)(1) in diversity actions have construed the amended statute to bring a payment guarantee within the compass of performing services in New York."  Twin City Fire Ins. Co. v. Harel Ins. Co. Ltd., No. 10 Civ. 07842, 2011 WL 3480948, at *2 (S.D.N.Y. Aug. 5, 2011) (citation omitted) (holding a professional indemnity and director and officers liability policy issued by foreign insurer to New York company provided basis for jurisdiction under "contracts anywhere" clause of 302(a)(1)); see also Chase Manhattan Servs. Corp. v. Nat'l Bus. Syst. Inc., 766 F. Supp. 203, 205 (S.D.N.Y. 1991) (citing cases); Rielly Co., Inc. v. Lisa B., Inc., 586 N.Y.S.2d 668, 669 (N.Y. App. Div. 3d Dep't 1992) (holding nondomiciliary corporation's promise to pay debt of domestic corporation sufficient for jurisdiction under 302(a)(1) and "is consistent with the general principles applicable to long-arm jurisdiction applied by the Court of Appeals").

In Armada Supply Inc. v. Wright, 858 F.2d 842 (2d Cir. 1988), the Second Circuit held that jurisdiction over a foreign insurer was appropriate under the "contracts anywhere" language of § 302(a)(1), where a Brazilian underwriter insured cargo belonging to Armada, a corporation authorized to do business in New York.  858 F.2d at 848.  The court held that "[c]learly, contracting to insure property located within a jurisdiction, even if the presence of that property is transitory, subjects a foreign marine insurer to jurisdiction on suits over such insurance."  Id. at 849.  The same principle applies here.

MMC is listed as the policy holder of the GIO Policies.  (See Hall Decl. Exs. B, C.) There is no dispute that MMC is physically present in New York.  Indeed, the cover of both GIO

5

Policies lists MMC's address as 1166 Avenue of the Americas, New York, New York 10036. (Id.) With thousands of employees in New York, MMC's presence in the state is substantial. (See Declaration of Joel Hughes, ¶ 4.) The parties selected New York law to govern the Policies. (See Hall Decl., Exs. B, C, D.) Thus, "[b]y issuing a policy from [Australia] with the expectation that it could be claimed upon for events occurring within New York, [GIO] subjected itself to the jurisdiction of courts in New York under the language of CPLR 302(a)(1)." See Twin City Fire Ins. Co., 2011 WL 3480948, at *2 (citation omitted); cf. Bohn v. Bartels, 620 F. Supp. 2d 418, 426 (S.D.N.Y. 2007) (finding no promise to perform services in New York made by defendant's insurer where insured resided in Portugal at the time the policy was issued "and New York was in no way a consideration, let alone an important element of the contract").

   C.  Due Process

The exercise of long arm jurisdiction over GIO also comports with the constitutional requirements of due process. "The due process test for personal jurisdiction has two related components: the 'minimum contacts inquiry' and the 'reasonableness' inquiry." Metro Life Ins. Co. v. RobertsonCeco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

To determine whether a defendant's minimum contacts with the forum state satisfy the Due Process Clause of the Fourteenth Amendment, courts apply "the same test as the New York courts use with respect to the long-arm statute: whether the defendant has purposefully availed himself of the 'privilege of conducting activities' in New York." Morgan Stanley & Co., Inc. v. Seghers, No. 10 Civ. 5378, 2010 WL 3952851, at *3 (S.D.N.Y. Oct. 8, 2010). For several years, GIO issued insurance policies to MMC, which has substantial operations in New York. The Defendant also agreed that New York law shall govern the terms of those Policies. As such, GIO "purposefully avail[ed] itself of the privilege of conducting activities within the forum

State" and deliberately sought "the benefits and protections" of New York's laws.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985).  GIO's minimum contacts thus satisfy Due Process.

In assessing the reasonableness of a particular exercise of jurisdiction under the Due Process Clause, the Court must consider:

> (1) the burden on the defendant, (2) the interests of the forum State, and (3) the plaintiff's interest in obtaining relief. It must also weigh in its determination (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 173 (2d Cir. 2010) (citation omitted).  The first factor is satisfied in this case.  While there may be some burden to GIO, any inconvenience involved in litigating in a foreign forum cuts both ways and is negligible.  See id.  Moreover, GIO has already demonstrated its willingness to travel to New York in order to renegotiate its obligations under the GIO Policies.  (See Hughes Decl., ¶¶ 17-20.)  With respect to the second factor, the interests of New York as the forum state are high, "since a state frequently has a 'manifest interest in providing effective means of redress for its residents.'"  Chloe, 616 F.3d at 173.  As noted, the GIO Policies are to be interpreted under New York law, and New York has a strong interest in seeing insurers comply with policies they issue to New York residents.  The third factor also weighs in favor of jurisdiction, as MMC alleges it has incurred significant losses as a result of GIO's alleged breach of the Policies.  Finally, exercising jurisdiction in this case promotes an efficient resolution of the parties' controversy and furthers the policies of finality and repose.  Jurisdiction is therefore reasonable under the Due Process Clause.[3]

---

[3] To the extent that GIO argues it had no expectation of being haled into court in New York because the Policies require the parties to arbitrate their disputes in London, (Def's Mem. at 11), this argument is meritless.  GIO cites no

## CONCLUSION

For the foregoing reasons, the Court has personal jurisdiction over GIO pursuant to N.Y. CPLR § 302(a)(1). GIO's motion to dismiss under Fed.R.Civ.P. 12(b)(2) is denied. In light of this ruling, the Court need not reach the parties' remaining jurisdictional arguments. The Clerk of Court is directed to terminate this motion at Docket No. 10.

Dated: New York, New York
August 31, 2012

PAUL A. CROTTY
United States District Judge

---

authority for the proposition that, at this stage of the litigation, an arbitration clause in an insurance agreement renders the exercise of jurisdiction fundamentally unfair where the constitutional requirements are otherwise met. Indeed, GIO has not moved to compel arbitration in this case. Regardless of whether or not this dispute may ultimately prove arbitrable, the record adequately shows that the exercise of jurisdiction in this case does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).