UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Marsh & McLennan Companies, Inc.,

      Plaintiff,

   v.

GIO Insurance Limited,

      Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 6, 2013

11 Civ. 8391 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

In this insurance coverage dispute, Plaintiff Marsh & McLennan Companies, Inc. ("MMC") seeks payment under two policies for professional liability coverage issued by Defendant GIO Insurance, Ltd. ("GIO"). GIO moves to dismiss the action in favor of arbitration, or in the alternative, stay the action pending arbitration. In addition, GIO moves for release of the $1.5 million security it has deposited with the Court. For the following reasons, GIO's motions to dismiss and release its security are denied, and its motion to stay is granted.

**BACKGROUND**

**A. Factual Background**[1]

MMC is incorporated in Delaware and has its principal place of business in New York, New York. GIO is an Australian corporation with its principal place of business in Sydney, Australia. MMC purchased professional liability insurance from several insurers for "Errors & Omissions" or "E&O" coverage. (Compl. ¶¶ 6–14, ECF No. 1-1.) During the period of September 30, 1999 through September 30, 2000, MMC's E&O coverage included a primary layer and two layers of excess coverage. (Id. ¶¶ 7–9.) The primary layer was insured by Epsilon Insurance Company, Ltd., MMC's captive carrier (the "Epsilon Policy" (ECF No. 1-3)).

---

[1] The Court assumes familiarity with factual predicate for this dispute, which has been summarized in previous orders in this matter. See Marsh & McLennan Cos. v. GIO Ins. Ltd., 2012 WL 3822357 (S.D.N.Y. Aug. 31, 2012) (ECF No. 23). The Court herein recites only those facts relevant to the instant motions.

(Compl. ¶ 8.)  GIO insured a portion of the two excess layers (collectively, the "GIO Policies" (ECF No. 1-2)).  (Compl. ¶¶ 11–12.)  MMC alleges it made various claims under the GIO Policies, but GIO has refused to pay the full amounts owed.  (Compl. ¶¶ 18, 26, 27.)

### B. Procedural History

On October 19, 2011, MMC filed a complaint in New York State Supreme Court asserting breach of contract claims against GIO.  GIO removed the action to this Court on November 18, 2011.  (ECF No. 1.)  On August 31, 2012, the Court denied GIO's motion to dismiss for lack of personal jurisdiction.  (ECF No. 23.)  The Court also ruled, on November 26, 2012, that pursuant to New York Insurance Law Section 1213(c)(1), GIO as an "unauthorized foreign or alien insurer" was required to post $1.5 million in security prior to filing any pleading in this action.  (ECF No. 32.)  GIO complied with the Court's order, posted security, and on December 19, 2012, filed the instant motion to dismiss and for release of its security.

### C. The Arbitration Provisions

The Epsilon Policy contains an arbitration provision, which provides:

> Any dispute arising under this policy shall be finally and fully determined in London, England under the provisions of the English Arbitration Act of 1950, as amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows:
>
> Any party to the dispute may, once a Claim or demand on his part has been denied or remains unsatisfied for a period of twenty (20) calendar days by any other, notify the others of its desire to arbitrate the matter in dispute and at the time of such notification the party desiring arbitration shall notify any other party or parties of the name of the arbitrator selected by it. . . .
>
> The Insured shall be entitled to assert Claims against the Company for coverage under this policy . . . in an arbitration between the Company and the Insured pursuant to this Section . . . .  (Epsilon Policy at 10–11.)

The GIO Policies each contain an incorporation clause that adopts the provisions of the Epsilon Policy:

> V. INCORPORATION OF TERMS
> Except as otherwise provided herein, this policy incorporates the exact terms and conditions of the primary policies as applicable. All other terms and conditions of any forms attached hereto are deleted to the extent that they vary from or are inconsistent with the terms and conditions of the primary policies. (GIO Policies at 3.)

### D. The Parties' Arguments

GIO moves to dismiss based on the arbitration provisions incorporated in the parties' agreement. GIO argues that under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., this dispute must be arbitrated. GIO further argues that the Court should dismiss, rather than stay, the action pending arbitration because all the claims are arbitrable. GIO also seeks release of its security, arguing that the arbitrators should make the determination as to provisional remedies.

MMC responds that GIO cannot move to dismiss or stay these proceedings in favor of arbitration because GIO has not initiated nor moved to compel arbitration. In any event, MMC argues this action should not be dismissed but only stayed. MMC argues that Second Circuit policy favors stays over dismissals; that efficiency weighs in favor of a stay, since judicial proceedings will be required for enforcement and this Court has already ruled on several motions; and that the security required by the Court is needed to protect MMC.

## DISCUSSION

### I. THE ARBITRABILITY OF THIS DISPUTE

The parties agree that this dispute over the import of arbitration provisions in an agreement between a foreign insurer and a New York State is controlled by the FAA.[2] See

---

[2] The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") applies to "[a]n arbitration agreement . . . arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in [9 U.S.C. § 2]" if that agreement is not "entirely between citizens of the United States." Id. § 202; see also id. §§ 1, 203.

3

Nulife Entm't Inc. v. Torres, 698 F. Supp. 2d 409, 412 n.1 (S.D.N.Y. 2010). "The FAA's provisions manifest a liberal federal policy favoring arbitration agreements." Accenture LLP v. Spreng, 647 F.3d 72, 74 (2d Cir. 2011) (citation and internal quotations omitted). This federal policy favoring arbitration "is even stronger in the context of international business transactions." Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 393 (2d Cir. 2011) (internal quotations omitted); see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985) (noting that federal policy favoring arbitration has "special force in the field of international commerce"). In light of this strong federal policy, any ambiguities in an agreement must be resolved in favor of arbitration. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995) (citations omitted).

MMC does not directly contest that the parties' dispute is subject to arbitration pursuant to the provisions in the Epsilon Policy as incorporated by the GIO Policies. Rather, MMC argues that because GIO did not itself demand arbitration, its motion to dismiss or stay this action in lieu of arbitration should be denied. Neither the agreements at issue nor the FAA, however, require GIO (which is not asserting any claims) to demand arbitration when MMC (the party asserting claims) has not. As noted, the Epsilon Policy provides that "[a]ny party to the dispute may, *once a Claim or demand on <u>his</u> part has been denied or remains unsatisfied for a period of twenty (20) calendar days* by any other, notify the others of its desire to arbitrate the matter in dispute . . . ." (Epsilon Policy at 10 (emphasis added).)

In a related vein, MMC obliquely argues that GIO's motion should be denied because it is in default under the FAA. This argument also misses the mark. Under Section 3 of the FAA, a federal court shall stay the trial of "any issue referable to arbitration under an agreement in writing for such arbitration," as long as the court is "satisfied that the issue involved . . . is

4

referable to arbitration under such an agreement," and "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. "[T]he fact that defendant may have breached the contract [is] not a 'default' within that statutory provision; . . . the initiative as to proceeding with the arbitration rest[s] upon plaintiff." Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 989 (2d Cir. 1942); see Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 454 (2d Cir. 1995) (explaining that default provision of Section 3 "referred to a party 'who, *when requested*, has refused to go to arbitration or who has refused to proceed with the hearing before the arbitrators once it has commenced'" (quoting Kulukundis, 126 F.2d at 989) (emphasis added)). Courts in this Circuit have held that "[o]nly if there has been litigation pertaining to 'substantial issues going to the merits' will a party be deemed to have waived arbitration." Thyssen, Inc. v. M/V Markos N, No. 97 Civ. 6181 (MBM), 1999 WL 619634, at *7 (S.D.N.Y. Aug. 16, 1999) (quoting Doctor's Assocs., 66 F.3d at 457)). The record here does not show that GIO has refused or attempted to avoid arbitration, and the prior motion practice in this Court has not addressed the merits of this action. Cf. Shanferoke Coal & Supply Corp. of Delaware v. Westchester Serv. Corp., 70 F.2d 297, 299 (2d Cir. 1934) (Hand, J.) ("[Defendant] in its answer and moving affidavits has merely expressed its willingness to submit to arbitration. This appears to us enough[.]"), aff'd 293 U.S. 449 (1935). Accordingly, GIO is not in default. See Wu v. Pearson Educ., Inc., No. 09 Civ. 6557 (RJH), 2010 WL 3791676, at *4 (S.D.N.Y. Sept. 29, 2010) (rejecting "strained reading of Section 3" similar to that which MMC advances here).

    MMC's reliance on Marcus v. Frome is misplaced. See 275 F. Supp. 2d 496 (S.D.N.Y. 2003). In Marcus, the arbitration provision stated that "either party" could institute arbitration, subject to limitations not relevant here. See id. at 504–05. The arbitration provision here, however, states that only the party whose claim or demand has been denied may do so. Also, in

contrast to the mandatory arbitration provision here that "[a]ny dispute arising under this policy shall be finally and fully determined" by arbitration (see Epsilon Policy at 10), the provision in Marcus was permissive and left the door open to litigation.  See 275 F. Supp. 2d at 505.

Here, the only party asserting a claim is MMC, and MMC has not identified why it could not demand arbitration, then, if GIO failed to comply, seek the Court's intervention to compel arbitration.  MMC, as the party authorized to initiate arbitration under the relevant provisions, cannot fail to do so and then use such inaction as an end-run around the arbitration provisions at issue.  See Southland Corp. v. Keating, 465 U.S. 1, 7 (1984) ("Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts.")

## II.   THE STATUS OF THIS ACTION PENDING ARBITRATION

Should there be an enforceable agreement to arbitrate, the FAA directs the Court to grant a stay.  See 9 U.S.C. § 3.  However, "where defendants have sought dismissal rather than a stay, courts in this district have granted dismissal." Kowalewski v. Samandarov, 590 F. Supp. 2d 477, 491 (S.D.N.Y. 2008) (citation omitted).  These courts have recognized that where all the issues to be decided must be arbitrated, dismissal rather than a stay may be appropriate.  See Arrigo v. Blue Fish Commodities, Inc., 704 F. Supp. 2d 299, 304–05 (S.D.N.Y. 2010) (collecting cases)).  Contrary to MMC's arguments, the Second Circuit has not required district courts to stay, rather than dismiss, litigations pending arbitration, but has merely instructed district courts to state clearly whether an action was stayed or dismissed, so that appellate jurisdiction may be determined.  See Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90, 93 (2d Cir. 2002).  The Second Circuit has, however, highlighted considerations for district courts' analysis, noting that "the decision between dismissal and stay has implications for the speed with which arbitration may begin, because a dismissal is an appealable order, whereas a stay is not." Dixon v.

NBCUniversal Media, LLC, No. 12 Civ. 7646 (PAE), 2013 WL 2355521, at *11 (S.D.N.Y. May 28, 2013); see Salim Oleochemicals, 278 F.3d at 93 (noting that because "[u]nnecessary delay of the arbitral process through appellate review is disfavored . . . [d]istrict courts should continue to be mindful of th[e] liberal federal policy favoring arbitration agreements . . . when deciding whether to dismiss an action or instead to grant a stay" (citations omitted)).

MMC argues that a stay is warranted in light of Second Circuit policy encouraging the swift resolution of arbitrable matters.  Yet, rather than initiating arbitration under the provisions at issue, MMC brought this action in New York State Supreme Court.  Since then, GIO has repeatedly invoked the arbitration provisions (e.g., as a basis for removal), but MMC (the party asserting claims) has not initiated the arbitration process and eliminated any unnecessary delay.  Cf. Dixon, 2013 WL 2355521, at *11 (staying proceedings pending arbitration "[t]o promote expeditious resolution of this dispute"); see Southland Corp., 465 U.S. at 7 (noting that ignoring arbitration provisions, and resorting to the courts, "could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate").

Despite MMC's failure to utilize the arbitration provisions in the relevant agreements, however, the Court recognizes that the dismissal of this action and possible appeal would further impede important federal policies favoring quick resolution of matters through arbitration.  In light of these policies, the Court stays this action for sixty days to allow MMC to initiate arbitration.

## III.   THE MAINTENANCE OF GIO'S SECURITY

"New York law specifically provides for provisional remedies in connection with an arbitrable controversy . . . and the equitable powers of federal courts include the authority to grant [them]."  Borden, Inc. v. Meiji Milk Prods. Co., 919 F.2d 822, 826 (2d Cir. 1990) (citing

N.Y. C.P.L.R. § 7502(c)); see also Bahrain Telecommunications Co. v. Discoverytel, Inc., 476 F. Supp. 2d 176, 180 (D. Conn. 2007) ("[T]he Second Circuit has held that federal courts have both the jurisdiction and authority to grant injunctions and provisional remedies in the context of pending arbitrations, including international arbitrations . . . .").[3] Section 1213 of the Insurance Law, however, does not use the same criteria as Section 7502(c) of the New York Civil Practice Law and Rules for orders of attachment and preliminary injunctions issued in aid of arbitration, which are only available if the potential award "may be rendered ineffectual without such provisional relief." N.Y. C.P.L.R. § 7502(c).

New York has made clear that Section 1213's security requirement is designed to help New York residents avoid "the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights" under insurance contracts. N.Y. Ins. Law § 1213(a); see Levin v. Intercontinental Cas. Ins. Co., 742 N.E.2d 109, 111 (N.Y. 2000) ("[B]y requiring a foreign carrier to post a bond at the outset of a proceeding, [Section 1213] seeks to assure that a foreign carrier's funds will be available in this State to satisfy any potential judgment against it[.]"); Signal Mut. Indem. Ass'n, Ltd. v. Rice Mohawk U.S. Const. Co., No. 95 Civ. 3721 (LMM), 1997 WL 148813, at *2 (S.D.N.Y. Mar. 28, 1997) ("Such precautions enable foreign insurers . . . to operate in New York without first obtaining insurance licenses. Consequently, this provision benefits both the residents of New York and the foreign insurance companies allowed to operate in New York."). This policy rationale is diminished somewhat here because MMC is a sophisticated business entity that entered multiple agreements requiring arbitration in London under foreign law. Yet, in deference to New York's public policy regarding unauthorized

---

[3] A district court's "entertaining an application for such a [provisional] remedy . . . is not precluded by the [New York] Convention but rather is consistent with its provisions and its spirit." Borden, 919 F.2d at 826. Accordingly, GIO's argument that the arbitral tribunal alone must decide this issue fails.

foreign insurers (particularly in light of the parties' dispute about GIO's run-off status and its ability to satisfy any potential arbitral award and judgment), the Court will not release GIO's security pending the arbitration. See, e.g., Northwestern Nat'l Ins. Co. v. Kansa Gen. Ins. Co., Ltd., No. 92 Civ. 7433 (LJF), 1992 WL 367085, at *3 (S.D.N.Y. Nov. 25, 1992) (compelling arbitration and requiring security under Section 1213).

## CONCLUSION

For the foregoing reasons, GIO's motion to dismiss and motion to release its security deposit are DENIED, but GIO's motion to stay this litigation pending arbitration is GRANTED. MMC has sixty (60) days to initiate arbitration and is granted leave to seek the Court's intervention should GIO fail to comply.

Dated: New York, New York
August 6, 2013

SO ORDERED

PAUL A. CROTTY
United States District Judge

9